IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| RICHARD B. ROPER, Receiver, | § | |
| | § | |
| Garnishor, | § | |
| V. | § | |
| | § | |
| JPMORGAN CHASE BANK, N.A. | § | |
| | § | Civil Action No. _____ |
| Garnishee, | § | |
| V. | § | |
| | § | |
| ROY D. SCHAHRER | § | |
| | § | |
| Judgment Debtor/Defendant | § | |

## AFFIDAVIT OF RICHARD B. ROPER IN SUPPORT OF APPLICATION FOR WRIT OF GARNISHMENT

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

BEFORE ME, the undersigned notary, on this day personally appeared Richard B. Roper, affiant, a person whose indentity is known to me. After I administered an oath to affiant, affiant testified:

1. I am Richard B. Roper, Receiver. I am over 21 years of age, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. I am authorized to make this affidavit in support of the Receiver's Application for a Writ of Garnishment.

3. On April 9, 2012, I, Richard B. Roper, Receiver, obtained a judgment in Cause No. 7:11-cv-00031-O, Roper v. Abbott, et.al. against Roy D. Schahrer for the sum of a principal balance of $12,247.42 plus post-judgment interest at a rate of 0.12%. Attached hereto as Exhibit A-1 is a true



EXHIBIT A

and correct copy of the Final Judgment. As of January 6, 2015, the total principal balance of the Final Judgment and post-judgment interest on the Final Judgment remains due and owing as no payments have been made and no credits or offsets are due to Defendant Roy D. Schahrer.

4. Said Judgment is valid and subsisting and remains unsatisfied.

5. Within the Receiver's knowledge, Roy D. Schahrer does not possess property in Texas subject to execution sufficient to satisfy said judgment.

6. This garnishment is not sought to injure or harass JPMorgan Chase Bank, N.A. or Roy D. Schahrer.

7. The Receiver has reason to believe, and does believe that Garnishee is indebted to Roy D. Schahrer by reason of one or more bank accounts in the name of Roy D. Schahrer. This belief is based on the Receiver's due diligence in this case.

Dated: January 7th, 2016

Richard B. Roper, Affiant

Sworn to and subscribed before me by Richard B. Roper on January 7, 2016.

Patti Pyles
Notary Public, State of Texas

PATTI PYLES
Notary ID# 00603908-4
My Commission Expires
April 9, 2017

MA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| RICHARD B. ROPER, RECEIVER, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 7:11-cv-031-O |
| § | |
| MITCHELL ABBOTT, et al., § | |
| § | |
| Defendants. § | |

## ORDER

Before the Court is Receiver Richard Roper's (the "Receiver") Motion for Default Judgment (ECF No. 115), filed January 24, 2012. The Receiver seeks default judgment against the following defendants: Charles Wayne Anderson, John A. Bailey, John Barrow, Jon D. Bedingfield, Virginia A. Bedingfield, Donald Blakeman, Irene Blakeman, Dave Bristow, Jim Buck, Jane Caito, Thomas Caito, Lisa Cavness, Wade Cavness, Trent S. Chason, Samuel R. Fowler, III, Michael James Gallaway, the George and Adelle Baker Trust, Gary L. Green[1], Rina Gupta, Sachin Gupta, Deborah M. Hankey, Seth Hankey, Daryl C. Hoegel, Jackie S. Hoegel, Maureen Horgan, Mark Johnson, Monica Johnson, Carol S. Jones, Dionne Kendrick, Angelia Klotz, Robert Klotz, Joseph Koziol, Lora Larson, Surendraih Makam, Bianca Manta, Gervase A. McCoy, Melekia Renee McCoy, Sean McQueen, Cleo Mueller, Daniel Mueller, N.J. Fulmer LLC, Carolyn Nevins, Long Nguyen, Beryl Nielson, Jewel Owens, Ioanna Papandreou, Vassilis Papandreou, Virginia Ramon, Bettie J Ruble,

---

[1] Defendant Gary L. Green ("Green") was previously dismissed by the Receiver. *See* Order, February 27, 2012, ECF No. 142. Accordingly, the Court finds that the Receiver's Motion for Default Judgment, as to Green, should be and is hereby **DENIED as moot**.

1

Russell L Ruble, Roy D Schahrer, Betty Smith, Charles Smith, Christine Smith, Theordora Strates, Earl Struck, Marian Struck, Douglas Sutherland, Modeline Telfort, Vi Thai, the Jaboro Family Trust, Barbara Thomson, Bruce Thomson, Jesus Torres, Maria Alicia Torres, James Torseth, Nicki Varvisotis, Ruthann Walters, Tim Walters, Weiheng Wang, Xiaobin Gao Wang, Jake Watt, and Matthew Whitman (collectively, "Default Defendants").[2] After considering the pleadings, the evidence, and the applicable law, the Court finds that the Receiver's Motion for Default Judgment should be and is hereby **GRANTED in part and DENIED in part.**

## I.   BACKGROUND

This case arises out of the Securities and Exchange Commission's ("SEC") ongoing securities fraud action against William Wise, his associates, and various entities under Wise's control (the "Millennium Entities"). The Millennium Entities purported to operate as a bank and represented to the public that it provided high-yield Certificates of Deposit ("CDs"). The Millennium Entities, however, operated as a Ponzi scheme[3] by taking funds from later investors to re-pay earlier investors and by appropriating investor funds for personal use. As part of that litigation, this Court appointed the Receiver and authorized him to commence any actions necessary to recover assets of the Receivership Estate. *See generally* Am. Order Appointing Receiver, SEC v. Millennium Bank, No. 7:09-CV-050-O (N.D. Tex. June 22, 2009), ECF No. 47. Pursuant to those powers, the Receiver filed this action to recover approximately $6 million in alleged CD proceeds

---

[2] The Court notices that while an entry of default was entered against defendant Joseph T. Johnson, this defendant was not included in the Receiver's Motion for Default Judgment. Consequently, the Court will not consider default judgment as to Joseph T. Johnson in this order.

[3] "A Ponzi scheme is a scheme whereby a corporation operates and continues to operate at a loss. The corporation gives the appearance of being profitable by obtaining new investors and using those investments to pay for the high premiums promised to earlier investors." *Janvey v. Alguire*, 647 F.3d 585, 597 (5th Cir. Tex. 2011).

2

paid to certain investors (the "Net Winning Investors") of the Millennium Entities. *See* Compl. 3, ECF No. 1.

The Receiver has previously obtained entry of default against the Default Defendants. *See generally* Entry of Default, ECF Nos. 168-240. The Receiver now moves for default judgment against the Default Defendants. *See generally* Receiver's Mot. Default J., ECF No. 115.

The Receiver alleges that certain transfers, which were purported interest payments, made to the Net Winning Investors were fraudulent as to the Millennium Entities' creditors, including defrauded investors. *See* Compl. 5-6, ECF No. 1. The Receiver argues that he is entitled to recover the funds used by the Millennium Entities to make these purported interest payments because the funds came directly from the sale of CDs to other investors and were in excess of the Net Winning Investors' initial investment amounts. *See* Receiver's Mot. Default J. 5, ECF No. 115. Because the purported interest paid out by the Millennium Entities was in furtherance of a fraudulent investment scheme, the Receiver alleges that the transfers constitute actual and constructive fraud and should be returned to the Receivership Estate pursuant to the California Uniform Fraudulent Transfer Act (the "California UFTA").[4] *See* Compl. 8-10, ECF No. 1. The Receiver further contends that these transfers constitute unjust enrichment on the part of the defendants because the Net Winning Investors were enriched at the expense of defrauded investors. *See id.* at 10. Finally, the Receiver argues that the funds should be impressed with a constructive trust. *See id.* at 11.

---

[4] The Receiver filed suit in this Court pursuant to diversity jurisdiction alleging claims under California law. *See* Br. Supp. Mot. Summ. J. 4, ECF No. 118. The parties have not raised choice of law issues. As such, the Court need not address this. *See Tobin v. AMR Corp.*, 637 F. Supp. 2d 406, 412 (N.D. Tex. 2009) ("The court need not sua sponte analyze choice of law issues unless raised by the parties.").

3

## II. DEFAULT JUDGMENT STANDARD

Federal Rule of Civil Procedure 55 sets forth certain conditions under which default may be entered against a party, as well as the procedure by which a party may seek the entry of default judgment. The Fifth Circuit requires a three-step process for entry of a default judgment. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) (citing Fed. R. Civ. P. 55(a)). First, a *default* occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules. *See id.* Second, an *entry of default* may be entered when the default is established by affidavit or otherwise. *See id.* Finally, a plaintiff may then apply to the court for a *default judgment* after an entry of default is made. *See id.*

According to the Receiver's evidence, the following Default Defendants were served a summons and copy of the complaint signed by the Receiver on the following days:

| Last Name | First Name | Investor ID Number | Date of Service |
|---|---|---|---|
| Anderson | Charles Wayne | 000022 | July 11, 2001 |
| Bailey | John A. | 000037 | July 16, 2011 |
| Barrow | John | 000058 | Mar. 24, 2011 |
| Bedingfield | Jon D. and Virginia A. | 000065 | Mar. 24, 2011 |
| Blakeman | Irene and Donald | 000085 | Mar. 24, 2011 |
| Bristow | Dave | 000105 | Mar. 24, 2011 |
| Buck | Jim | 000125 | July 12, 2011 |
| Caito | Thomas and Jane | 000140 | July 14, 2011 |
| Cavness | Wade and Lisa | 000167 | Mar. 26, 2011 |
| Chason | Trent S. | 000171 | Nov. 26, 2011 |
| N.J. Fulmer LLC | | 000325 | Apr. 1, 2011 |
| Gallaway | Michael James | 000331 | Mar. 25, 2011 |
| Gupta | Sachin and Rina | 000395 | Apr. 22, 2011 |
| Hankey | Seth and Deborah M. | 000411 | July 11, 2011 |
| Hoegel | Daryl C. and Jackie S. | 000443 | May 26, 2011 |
| Horgan | Maureen | 000451 | Mar. 25, 2011 |
| The Jaboro Family Trust | | 000469 | Apr. 2, 2011 |

| | | | |
|---|---|---|---|
| Johnson ✓ | Mark and Monica | 000491 | Mar. 26, 2011 |
| Kendrick ✓ | Dionne | 000522 | Mar. 31, 2011 |
| Klotz ✓ | Robert | 000544 | July 14, 2011 |
| Klotz ✓ | Angelina | 000544 | July 17, 2011 |
| Koziol ✓ | Joseph | 000561 | Nov. 26, 2011 |
| Larson ✓ | Lora | 000580 | Mar. 28, 2011 |
| Makam ✓ | Surendraih | 000640 | Mar. 24, 2011 |
| McQueen ✓ | Sean | 000675 | Mar. 25, 2011 |
| McCoy ✓ | Gervase and Melekia Renee | 000678 | July 26, 2011 |
| Mueller ✓ | Daniel and Cleo | 000719 | Mar. 24, 2011 |
| Nguyen ✓ | Long | 000745 | Mar. 26, 2011 |
| Nielson ✓ | Beryl | 000748 | Mar. 30, 2011 |
| Owens ✓ | Jewel | 000770 | July 3, 2011 |
| Papandreou ✓ | Vassillis and Ioanna | 000777 | Nov. 28, 2011 |
| Ramon ✓ | Virginia | 000827 | July 18, 2011 |
| Ruble ✓ | Russell L. and Bettie J. | 000870 | Mar. 31, 2011 |
| Schahrer ✓ | Roy D. | 000890 | Mar. 25, 2011 |
| Smith ✓ | Charles and Betty | 000953 | Mar. 24, 2011 |
| Smith ✓ | Christine | 000954 | July 12, 2011 |
| Strates ✓ | Theodora | 000986 | May 19, 2011 |
| Struck ✓ | Earl and Marian | 000989 | Nov. 28, 2011 |
| Sutherland ✓ | Douglas | 000994 | Mar. 25, 2011 |
| Telfort ✓ | Modeline | 001009 | Mar. 25, 2011 |
| Thai ✓ | Vi | 001011 | Mar. 23, 2011 |
| Thomson ✓ | Bruce and Barbara | 001019 | Apr. 1, 2011 |
| Torres ✓ | Jesus and Maria Alicia | 001023 | July 12, 2011 & Nov. 26, 2011 |
| Torseth ✓ | James | 001024 | July 18, 2011 |
| Varvisotis ✓ | Nicki | 001042 | Mar. 31, 2011 |
| Walters ✓ | Tim and Ruthann | 001061 | July 12, 2011 |
| Watt ✓ | Jake | 001076 | Apr. 18, 2011 |
| Whitman ✓ | Matthew | 001097 | July 21, 2011 |

*See* Receiver's App. Supp. Req. Entry Default (Evidence of Service), at App. 84-164, ECF No. 109.

In addition, while there is proof of service for Default Defendants Samuel R. Fowler, III, Carol S.

Jones, Bianca Manta, Carolyn Nevins, Xiaobin Gao Wang, Weihang Wang, and the George and

5

Adelle Baker Trust, the exact date of service for each defendant is not clear from the record. *See id.* (Evidence of Service), at App. 110, 114, 126, 133, 162, 89, ECF No. 109. The Receiver contends, however, that all appropriate deadlines have lapsed. *See* Receiver's App. Supp. Mot. Default J. (Decl. Roper), at App. 108, ECF No. 115. The Default Defendants have failed to file any answer, motion, or otherwise defend against this action within the appropriate time period pursuant to Rules 12(a)(1)(A)(i) and 6(a)(1). *See* Receiver's Mot. Default J. 3, ECF No. 115. Because of this failure, the United States District Clerk entered default against Default Defendants on March 14, 2012, pursuant to Rule 55(a). *See generally* Entry Default, ECF Nos. 168-240. The Receiver now moves for default judgment against Default Defendants pursuant to Rule 55(b)(2).

## III. APPROPRIATENESS OF DEFAULT JUDGMENT

The Fifth Circuit holds that "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). "[A] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Rather, a default judgment is generally committed to the discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977). In determining whether a default judgment should be granted, the court considers a number of factors: (1) whether the default was caused by a good faith mistake or excusable neglect; (2) whether there has been substantial prejudice; (3) the harshness of a default judgment; (4) whether there are material issues of fact; (5) whether the grounds for a default judgment are clearly established; and (6) whether the court itself would be obligated to set aside the default on the defendant's motion. *See Lindsey v. Price Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

6

There is no evidence that Default Defendants' failure to respond or otherwise defend against this action is the product of a "good faith mistake or excusable neglect." *See id.* Substantial prejudice has resulted from Default Defendants' failure to appear in this action because the Receiver has been unable to receive expeditious relief. *See U.S. v. Fincanon*, No. 7:08-CV-61-O, 2009 WL 301988, at *2 (N.D. Tex. Feb. 6, 2009) (O'Connor, J.) (holding that a plaintiff's interests were prejudiced because the defendant's failure to respond brought the adversary process to a halt). Default Defendants' failure to respond despite having received proper service of summons, complaint, and notice, mitigates the harshness of a default judgment. *See id.* Default Defendants' failure to respond to the complaint means there are no material issues of fact. *See Nishimatsu Constr. Co. v. Hous. Nat'l. Bank*, 515 F.2d 1200, 1205 (5th Cir. 1975) (noting that "[t]he defendant, by his default, admits the plaintiff's well pleaded allegations of fact"); *Tex. Guaranteed Student Loan Corp. v. Express Moving, L.L.C.*, No. 3:09-CV-824-O, 2010 WL 727756, at *1 (N.D. Tex. Feb. 26, 2010) (O'Connor, J.). The Court finds no good cause for which it would be obligated to set aside the default if challenged by Defendants. *See Lindsey*, 161 F.3d at 893.

The Court recognizes that a default judgment may not be entered against an infant or incompetent person unless represented in the action by a general guardian, conservator, or other like fiduciary who has appeared. *See* Fed. R. Civ. P. 55(b)(2). Likewise, a default judgment may not be entered against an individual in military service, until an attorney is appointed to represent the defendant. *See* 50 U.S.C. app. § 521 (2008). In this case, the Court finds that, with one exception, none of the Default Defendants are infants, incompetent, or involved in military service.[5] *See*

---

[5] The Receiver did not include a Service Member's Affidavit for Default Defendant Earl Struck ("Struck"). Therefore, the Court cannot conclusively establish whether Struck is involved in military service. Accordingly, default judgment against Struck is inappropriate and hereby **DENIED**.

7

Receiver's App. Supp. Mot. Default J. (Service Member's Aff.), at App. 112-256, ECF No. 116. Consequently, the Court finds that the procedural prerequisites for entry of a default judgment have been satisfied.

Before default judgment may be entered, the Court must assess the merits of the Receiver's claims and the sufficiency of the Complaint. *See Nishimatsu*, 515 F.2d at 1206 ("[A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered.").

### A. Causes of Action

The Receiver seeks to recover funds transferred by the Millennium Entities to the Default Defendants pursuant to theories of actual fraud, constructive fraud, and unjust enrichment. *See* Receiver's Mot. Default J. 5, ECF No. 115. Moreover, the Receiver seeks to have the funds impressed with a constructive trust. *See id.*

#### 1. Actual Fraudulent Transfer

Under California's adoption of the Uniform Fraudulent Transfer Act ("UFTA"), a transfer is fraudulent if it was made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Cal. Civ. Code § 3439.04(a)(1). This is a codification of the actual fraud theory. *See Donnell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008)). "The mere existence of a Ponzi scheme is sufficient to establish actual intent to defraud." *Id.* (citing *In re AFI Holding*, 525 F.3d 700, 704 (9th Cir. 2008). Under an actual fraud theory, a creditor may bring an action, with some limitations, to avoid the fraudulent transfer or obligation in order to satisfy his claim. *See* Cal. Civ. Code § 3439.07.

8

A creditor's claim for avoidance may be limited by an innocent net winning investor's assertion of the "good faith" defense. *See* Cal. Civ. Code 3439.08(a) ("A transfer or an obligation is not voidable . . . against a person who took in good faith and for a reasonably equivalent value . . ."). The good faith defense "permits innocent winning investors to retain funds up to the amount of the initial outlay." *Donnell*, 533 F.3d at 771; *see Fisher v. Sellis (In re Lake States Commodities, Inc.)*, 253 B.R. 866, 872 (Bankr. N.D. Ill. 2000) (explaining that bankruptcy courts generally allow "Ponzi scheme investors to retain payments up to the amount invested because investors have claims for restitution or rescission against the debtor that operated the scheme"). To determine the liability of a good faith investor, courts will net the amounts transferred to the investor against the initial amounts invested by that individual. *See id.* If the net is positive, the creditor has established liability and the court will then determine the actual amount of liability. *See id.* Any amounts paid in excess of initial investments "are considered fictitious profits because they do not represent a return on a legitimate investment activity." *Fisher*, 253 B.R. at 872. As such, the receiver is entitled to disgorge these "fictitious profits," even from innocent investors who are unaware of the fraud, and return the funds to the receivership estate. *See McNamara v. Sher*, No. 11-CV-1344-BEN, 2012 WL 760531, at *4 (S.D. Cal. Mar. 8, 2012) (citing *Donnell*, 533 F.3d at 770).

Here, the Receiver alleges that the Millennium Entities engaged in a Ponzi scheme by purporting to operate as a bank and representing to the public that it provided high-yield CDs when, in actuality, the Millennium Entities took funds from later investors to re-pay earlier investors and appropriated investor funds for personal use. Compl. 5-6, ECF No. 1. Indeed, the Court has previously found in the underlying SEC action, that the Millennium Entities violated the Exchange Act and the Securities Act by operating as a Ponzi scheme. *See generally* Final J. Default, SEC v.

9

Millennium Bank, No. 7:09-CV-050-O (N.D. Tex. Mar. 15, 2011), ECF No. 175. Accordingly, the transfers made to the Default Defendants constitute actual fraud as a matter of law. *See Donnell*, 533 F.3d at 770 (holding that the existence of a Ponzi scheme establishes actual fraud as a matter of law); *In re AFI Holding*, 525 F.3d at 704. The Court finds the Receiver's allegations sufficient to support default judgment on the claim for actual fraudulent transfer.

By seeking only to disgorge payments made to the Default Defendants above their principal investment, the Receiver seemingly concedes that the Default Defendants acted in good faith. *See* Receiver's Mot. Default J., ECF No. 115; *Donnell*, 533 F.3d at 771 (finding that in the absence of the good faith defense, the receiver can recover the entire amount transferred, including amounts that could be considered "return of principal"). In support of his claims, the Receiver submits accounting worksheets that itemize each Default Defendant's principal investments, the amount of principal returned, and the amount of interest received above the principal amount returned. *See* Receiver's App. Supp. Mot. Default J. (Individual Investments), at App. 50-104, ECF No. 116. The accounting worksheets represent compiled data that was recovered from seized databases of the Millennium Entities. *See id.* (Decl. Roper), at App. 107-108, ECF No. 116-1. The seized databases contained information regarding investment amounts, interest rates, and dates that investments were either paid out to the investors or rolled over into new investments. *See id.* The Receiver's well-plead facts establish that each Default Defendant received amounts exceeding his principal investment. Accordingly, the Receiver is entitled to judgment on his claims for avoidance of the fraudulent transfers as a matter of law.

Because the Court finds that the Receiver can establish actual fraud, there is no need to evaluate the Receiver's claims that the transfers constitute constructive fraud or unjust enrichment.

10

### 2. Constructive Trust

Additionally, the Receiver argues that a constructive trust should be imposed on the funds used for the fraudulent transfers. A constructive trust is "an involuntary equitable trust created as a remedy to compel the transfer of property from the person wrongfully holding it to the rightful owner." *In re Real Estate Assocs. Ltd. P'ship Litig.*, 223 F. Supp. 2d 1109, 1140 (C.D. Cal. 2002). "The imposition of a constructive trust requires: (1) the existence of res (property or some interest in property); (2) the right of the complaining party to that res; and (3) some wrongful acquisition or detention of the res by another party who is not entitled to it." *Id.* The Receiver, however, has not plead sufficient facts to permit the Court to specifically identify property to encumber by a constructive trust.

Accordingly, the request to impose a constructive trust as a matter of law is **DENIED** without prejudice.

## IV. CONCLUSION

The Receiver additionally requests to be awarded pre-judgment interest on the amount of the avoided fraudulent transfers. *See* Compl. 12, ECF No. 1; Receiver's Mot. Default J. 6, ECF No. 115. The Court has discretion in permitting a receiver to recover pre-judgment interest on fraudulent transfers from the date the transfer was made. *Donnell*, 533 F.3d at 772. It is undisputed that the Default Defendants are innocent investors who were unaware of the fraud that was perpetrated by the Millennium Entities. Even though the Default Defendants are classified as Net Winning Investors, they are not true winners because their returns were illusory. *See id.* at 779. Equity, however, compels those who benefitted from the fraud to share some of the hardship borne by those who lost their principal investment. *See id.*

11

Accordingly, the Court finds that an award of pre-judgment interest is not appropriate in this matter and Receiver's request for pre-judgment interest is hereby **DENIED**.

Based on the foregoing, the Receiver's Motion for Default Judgment (ECF No. 115) is hereby **GRANTED** as to the following Defendants:

| Last Name | First Name | Investor ID Number | Amount of Judgment |
|---|---|---|---|
| Anderson | Charles Wayne | 000022 | $6,000.00 |
| Bailey | John A. | 000037 | $4,082.47 |
| The George and Adelle Baker Trust | | 000042 | $15,625.00 |
| Barrow | John | 000058 | $14,176.59 |
| Bedingfield | Jon D. and Virginia A. | 000065 | $2,835.32 |
| Blakeman | Donald and Irene | 000085 | $3,750.00 |
| Bristow | Dave | 000105 | $15,050.00 |
| Buck | Jim | 000125 | $13,500.00 |
| Caito | Thomas and Jane | 000140 | $84,000.00 |
| Cavness | Wade and Lisa | 000167 | $1,200.00 |
| Chason | Trent S. | 000171 | $6,000.00 |
| N.J. Fulmer LLC | | 000325 | $6,575.00 |
| Gallaway | Michael James | 000331 | $1,236.00 |
| Gupta | Sachin and Rina | 000395 | $1,502.56 |
| Hankey | Seth and Deborah M. | 000411 | $1,168.25 |
| Hoegel | Daryl C. and Jackie S. | 000443 | $21,753.89 |
| Horgan | Maureen | 000451 | $75,687.66 |
| Fowler | Samuel R, III | 000464 | $5,393.56 |
| The Jaboro Family Trust | | 000469 | $751.28 |
| Johnson | Mark and Monica | 000491 | $2,230.64 |
| Jones | Carol S. | 000497 | $4,035.63 |
| Kendrick | Dionne | 000522 | $2,835.32 |
| Klotz | Robert and Angelina | 000544 | $3,290.91 |
| Koziol | Joseph | 000561 | $3,829.93 |
| Larson | Lora | 000580 | $21,176.22 |
| Makam | Surendraih | 000640 | $2,160.00 |
| Manta | Bianca | 000650 | $1,875.00 |

12

| McCoy | Gervase and Melekia Renee | 000678 | $1,937.50 |
|---|---|---|---|
| McQueen | Sean | 000675 | $1,156.46 |
| Mueller | Daniel and Cleo | 000719 | $6,531.82 |
| Nevins | Carolyn | 000742 | $1,546.69 |
| Nguyen | Long | 000745 | $10,500.00 |
| Nielson | Beryl | 000748 | $8,250.00 |
| Owens | Jewel | 000770 | $18,222.54 |
| Papandreou | Vassilis and Ioanna | 000777 | $1,080.00 |
| Ramon | Virginia | 000827 | $2,835.32 |
| Ruble | Russell L. and Bettie J. | 000870 | $19,334.06 |
| Schahrer | Roy D. | 000890 | $12,247.42 |
| Smith | Charles and Betty | 000953 | $1,454.92 |
| Smith | Christine | 000954 | $22,476.08 |
| Strates | Theodora | 000986 | $11,500.00 |
| Struck | Marian | 000989 | $33,750.00 |
| Sutherland | Douglas | 000994 | $11,608.26 |
| Telfort | Modeline | 001009 | $4,082.47 |
| Thai | Vi | 001011 | $787.50 |
| Thomson | Bruce and Barbara | 001019 | $6,390.63 |
| Torres | Jesus and Maria Alicia | 001023 | $563.70 |
| Torseth | James | 001024 | $2,400.00 |
| Varvisotis | Nick | 001042 | $2,035.93 |
| Walters | Tim and Ruthann | 001061 | $6,100.00 |
| Watt | Jake | 001076 | $3,164.95 |
| Yang | Xiao Gao and Weihang | 001083 | $769.41 |
| Whitman | Matthew | 001097 | $12,000.00 |

It is further ORDERED that the Receiver's Motion for Default Judgment (ECF No. 115) is hereby DENIED as to [illegible], and DENIED as moot as to Gary L. Green.

SO ORDERED on this [illegible] day of April, 2012.

Reed O'Connor
UNITED STATES DISTRICT JUDGE

13